May it please the court. My name is Dennis Hart. I'm here today on behalf of Charles Lee Smoot. I'd like to begin my presentation with a confession. And that is, the first thing they teach in appeals lawyer school is that your job is to make a case simple, to refine it, to make it easy for busy judges who have many cases on their plate to understand it. And after reading the briefs in this case this week, I've come to the conclusion that I've failed that responsibility. So my confession is, perhaps this case is not one that can be easily condensed and distilled, put into a couple simple paragraphs. I take responsibility for not doing that to the court, but I think I must share it with others, one of which is defense counsel at trial and the district court, who I think had an obligation to refine and make more clear the facts that it relied upon when it reached its decision. The first thing I'd like to address is a theme that runs through the government brief, and that is that this case need not reach any of the arguments because Mr. Smoot has faced overwhelming evidence. We dispute that, and the government repeating it does not make it true. And this is a decision which each of the judges, of course, have to reach by themselves, but I wish to remind the court that there was no money ever recovered from Mr. Smoot. The government didn't intend to use any eyewitnesses of the robbery, Mr. Smoot. Money was never recovered from his person, you mean? But it was recovered from the 60th Street address, was it? Yes, the bait money was. But he was never seen disposing of it, despite surveillance. It's true the government has forensic evidence, but we believe that forensic evidence could have been disputed if Mr. Smoot had a lawyer who was interested in doing that. We claim he didn't. So if the court is ever inclined to reach the conclusion and agree with the government of overwhelming evidence, and I'm often reminded of the government's brief in which they claim that the bank surveillance was in high definition, ask the government to produce that surveillance so we can see for a fact why Mr. Smoot thought that he could go to trial at times and win. The second thing I'd like to talk about is the ineffectiveness of defense counsel. The criminal defense counsel's first test is whether they have sufficient confidence in themselves to perform brilliantly on cross-examination and destroy every government witness who is presented. That's the basic foundation of a defense lawyer's ethos. But despite what the government suggests in its brief, that's not sufficient to rebut the facts of ineffectiveness in this case. The case as we see it rested on DNA, on handwriting, and fingerprints. All forensic experts from which the defense never even requested a voucher for an expert to examine. Much of this information was given to the defense only days before trial. Yet the defense never asked for a continuance. To its credit, government counsel at trial pointed out to the court that they had just disclosed this. For instance, there were two handwriting examinations given. The second one had been disclosed just days before trial was to start. The defense had not requested a defense expert for the handwriting, perhaps its strongest evidence the government had. There was no request by the defense for an expert. And when the court said we're going to go to trial, defense never said anything about it. It was to the government's credit that government counsel at trial told the court that it didn't think that two weeks was sufficient for the defense to obtain an expert, get a report, and discuss it with the defendant for him to make a decision. The trial court replied that this wasn't high-tech, that it could be done in two weeks, and so it kept the trial date. We believe that... I'm sorry. What is it that would take two weeks? The defense, in a case like this, Mr. Smoot was appointed a lawyer. He had no funds to retain a lawyer, so he has to start the process from day one of getting an expert by requesting it from the trial judge. We know that was never done. Once the experts... Oh, I see. Okay. But what I mean to say, it's a long process. It can't be done overnight. The government can do it because it retains its own experts, but the defense can't do that. It's a long process that has to be started and cannot, as the government observed, be done in two weeks. The third issue I'd like to discuss is the agreement that, as the government does claim, Mr. Smoot lied in his Rule 11 inquiry. And I realize that's a serious admission because this court relies on what Mr. Smoot said during his plea hearing to establish facts. But what I want to emphasize to the court was that Mr. Smoot was faced to go to trial with a lawyer who he thought was unprepared, who he did not trust, in front of a judge who he thought was hostile to him. In that circumstance, Mr. Smoot had no alternative in his mind but to lie to the judge on the Rule 11 inquiry. Thus, he told the judge he had enough time. He told the judge he was satisfied with his lawyer. He told the judge he had no questions. Probably the ethicists in this room would stand up and say, no judge, I don't trust my lawyer to go to trial. I don't want to go to trial because he hasn't prepared. But the practical people in this room would do exactly what Mr. Smoot did, and that is lie. Now, I recognize the government raises a valid point when it says that this court has to rely on the Rule 11 inquiry to make its decisions. And it is a valid point, but Mr. Smoot would reply to that argument with the following. In this circumstance, the judge knew that Mr. Smoot was unsatisfied with his lawyer, with his preparation, and with the case. He knew that not just once or twice, but many times. And as a result, we believe the district court had an obligation to go beyond those simple answers. In a normal plea, where there's no contraindications, the judge may rely on the defendant saying, yes, I'm satisfied with my lawyer. But in this case, we believe the district court, in order to get to the truth, had an obligation to say, well, Mr. Smoot, I knew last week that you wanted to fire your lawyer. What's changed? Mr. Smoot, I know last week you wanted to go to trial. Why has that changed today? That obligation was not exercised by the district court in this case, and we believe that was error. I just want to ask you one quick question, which is on the handwriting expert, the argument you just made before this one. Yes, sir. There is an indication in the record that counsel wanted to retain a handwriting expert. Well, he may have said that, but he made no moves to do that. And the time period... I mean, it's because he indicated that he would like to, and then, I can't remember the exact time frame, but several days later, the plea was entered, so... Yes, but he gave no... The first indication you want to hire an expert is you submit a voucher for that, and the judge has to approve it. And that was never done. We know that. Okay. Thank you. Thank you, counsel. Thank you. Good morning, and may it please the court. Dan Leiners for the United States. Judge Srinivasan, I'll begin with your last question. On September 15th, the parties had a status hearing at which they discussed the government's disclosure of expert notice regarding that handwriting expert's opinion. It was at that hearing that defense counsel said that he intended to reach out to find an expert to conduct a handwriting analysis. The defendant signed the plea agreement three days later and entered his plea two days after that. And so there was an indication that defense counsel did intend to hire his own independent handwriting expert. As we pointed out in our brief, there was also ample reason or ample basis for defense counsel to cross-examine the government's other witnesses, particularly the DNA expert, given that there was a mixture of DNA found on the underarmor bag that Smoot used during the robbery. But all of this case must be understood in light of the overwhelming evidence of the defendant's guilt. For his various claims, he either has to show that rather than pleading guilty, there is a reasonable probability that he would have chosen to go to trial, or even more so, there's a reason that he would have, in fact, been better off going to trial. And in this case, the defendant cannot show that particularly. Did the surveillance I've forgotten, did the surveillance show the bank robber placing a magazine or leaving a magazine behind at the bank? Yes, Your Honor. It's my understanding that that's shown on the surveillance. This was high-definition surveillance. Although the video is not before the court, in the government's sentencing memorandum, it took a still shot of that video, and we provided that to the court. It's at Supplemental Appendix, page 226. And the defendant's fingerprints were found on that? On that magazine that he placed on the counter during the robbery. He was not wearing a mask during the robbery. He was wearing a unique hat and sunglasses. The magistrate judge who reviewed the video footage and ordered the defendant detained found that the person on the video bore a close resemblance to Smoot. The GPS trackers placed in the bait money were tracked to the location where Smoot was seen within 30 minutes of the robbery. The officers saw him holding what appeared to be a handful of cash. When the officers tried to pull him over when he left that location, he fled, showing his consciousness of guilt. When the officers obtained a search warrant for that location, they found pants that appeared to be the same pants the bank robber was wearing. They found this Under Armour bag, which could be seen on the video footage, that has Smoot's DNA on it. They saw him wearing the distinctive watch and shoes. And, in fact, when he was arrested two days later, he was wearing the same distinctive watch and shoes that can be seen in this high-resolution video. There was more than a single DNA sample in that bag, right? My understanding is that it contained Smoot's DNA as well as a mixture of other people's DNA. So there were more than one individual, but Smoot's DNA was on the bag. Assuming that that was verified, because that's the DNA test that is suspect when you've got multiple samples on a piece of evidence. If it's a single DNA sample, that's fairly reliable. Multiple is not. So, I mean, that's one of the reasons I suspect government counsel said at some point during this trial that there were reasons to be concerned about counsel's performance. The DNA, the handwriting initially was – I'm talking about the ineffective assistance. But the DNA, when you have multiple samples on a piece of evidence, it's not – the current science is that that is not in the category of single-sample DNA, which is very reliable. I don't know the science well enough to dispute Your Honor's characterization of the reliability. My understanding is that the DNA expert was prepared to testify that there were multiple individuals' DNAs present on the bag, but one of those – part of that DNA matched Smoot's. I'm not saying it was or was not. I mean, it just raises a question about why counsel didn't deal with the forensic evidence, the handwriting, the DNA, et cetera. Well, again, Your Honor, there was no handwriting opinion definitively linking the notes to Smoot until September 15th, and counsel immediately said he intended to hire an expert. The DNA – And did not. He didn't that day because Smoot pleaded guilty three days later. Right. The DNA, if unreliable, if Your Honor's correct about that, that's something that could be established through cross-examination of the government's DNA expert. The government's concern about the ineffectiveness arose from Smoot's complaint that his attorney never shared with him the first plea offer. The government was never concerned about Smoot's counsel preparedness for trial. And, in fact, the district court explicitly found, after discussing this issue with counsel, after having a pretrial hearing at which counsel told the court his defense strategy and the witnesses he had spoken to, the court found that the counsel had done about as well as one could expect under the circumstances and was adequately prepared for trial. Well, I think your brief even recites some of the things that defense counsel could have done to challenge the government's evidence that were not done. The things my brief was – I'm not making it up. I mean, this is something you're reporting to us as being an accurate concern. It's true that defense counsel hadn't hired a DNA expert. Right. The government believes that that's not necessary. The Supreme Court has made clear that you don't need tit-for-tat experts in order to establish – No, no, no. The question is – I mean, you're reciting it, so when I read that in the government's brief, that's just reinforcing something that instinctively would be a question in my mind. And then your brief says the same thing, and it's multiple, multiple DNA samples on a single piece of evidence. And then on the handwriting was the other thing that you mentioned in your brief as well as a matter of some concern. In other words, ways in which defense counsel could have attacked the government's case, not to say that they would or would not have prevailed, but I think the suggestion was being made that there were things that defense counsel could have done that were not done, which raises the question for the court, I think, as to whether or not in this case, as we've done in many cases, when there's an ineffective assistance claim, you send it back to the district court and let them resolve it in the first instance. Yes, Your Honor, so I think the record dispositively shows that defense counsel was adequately prepared for trial. The trial court found as much. The things that I suggested in my brief that defense counsel could have done were things that would have been done at trial, but the trial never happened. These weren't steps he had failed to take prior to trial. But even if the court has some concern about his preparedness for trial and thinks that there's enough of a question to remand, the defendant still has to show prejudice, and to show prejudice under the Supreme Court's decisions in Lee and Hill, the defendant has to establish a reasonable probability that but for counsel's errors, he would have not pleaded guilty, would have gone to trial, and under Lee, would have been better off going to trial. And the record dispositively shows that that's not the case. The overwhelming evidence shows that there was no chance of an acquittal here. This was one charge, so he would have had to have been acquitted to be better off at trial. And he would have received a higher sentence because going to trial, he would not have gotten the three points off his adjusted offense level for acceptance of responsibility and thus would have faced a higher guideline range, no limit on the government's ability to allocute for a higher sentence, and no limit on the government's ability to ask for an above guideline adjustment given that his lengthy criminal history was underrepresented by the accounting system under the guidelines. And so even if there's some question on the first prong of ineffectiveness, there's no question on the second prong, and thus no reason for a remand in this case. If the court has no further questions, the government would ask that the judgment be affirmed. Thank you. Thank you, counsel. There are two unrelated things I disagree with the government in their last presentation. In their brief and in their presentation, they tell the district court explicitly found trial counsel was prepared to go to trial. Yes, that is true, but that's not the real question. The question is were there facts upon which he could make that conclusion, and we suggest that the record is devoid of any inquiry. If you were trial counsel, defense counsel, what's your defense? What's your way of poking a hole in the government's case with respect to the watch and the shoes? Common items. And I would add that he lived in a house that was shared by 10 or 15 other people. But he's caught. I mean, when he's arrested, he's wearing the watch that is a distinctive watch that's shown on the video. I would find out how many watches were sold of that kind. Stolen? Sold. Sold. And what about the shoes, too? The same avenue. I would want to tell the jury that those are common items, that they are not distinctive. Just because they look unusual doesn't mean that other people don't wear them in that same house he lived in or in the same area where the bank robbery occurred. The second thing I would ask the court to consider is that a fingerprint. And the handwriting? Or the fingerprint? Well, the handwriting does raise a point. No, no, no, the fingerprints. Fingerprints. As the court noted, there were multiple fingerprints on the magazine left at the bank. There were five fingerprints, right? I'm sorry? There were five fingerprints, is that right? I think there were four, but there were multiples of other people is what I'm saying. Even if you take Mr. Smoot's four positive identifications for fingerprints on that magazine, you have to point out that he lived in a house with 10 to 15 other people who had access to the same clothes and where the money was also found. You know, any one of these items would probably be sufficient to convict. But if you put them together, I mean, I just don't see why that's just not overwhelming evidence. You can have an explanation one at a time, but when you start putting them together, then the explanation becomes less and less plausible with each item. I respect that observation, and that's why I'm here to convince the court that a lawyer who is committed to that case who had the facts behind him, an expert, an explanation, could have dissuaded a jury from reaching that conclusion. Thank you. Thank you, counsel. Mr. Hart, you are appointed by the court to represent the appellant,  Thank you.
judges: Srinivasan, Edwards, Randolph